421 A.2d 1184

**John T. COUTS, Administrator of the Estate of John R. Couts, Deceased, Appellant,**

v.

**Dean P. GHION**

v.

**REFRESHMENT PRODUCTS, INC., a corporation, and Holiday House, Inc., a corporation.**

Superior Court of Pennsylvania.

Argued Nov. 15, 1979.

Filed Sept. 5, 1980.

Reargument Denied Oct. 31, 1980.

Petition for Allowance of Appeal Denied Dec. 30, 1980.

Thomas Hollander, Pittsburgh, for appellant.

Aura N. Pershing, Greensburg, for Ghion, appellee.

Thomas W. Smith, Pittsburgh, submitted a brief on behalf of Refreshment Products, Inc., Appellee.

Richard L. Rosenzweig, Pittsburgh, for Holiday House, appellee.

Before SPAETH, HOFFMAN and VAN der VOORT, JJ.

HOFFMAN, Judge:

Appellant contends that the lower court erred in (1) granting summary judgment in favor of appellee Refreshment Products, Inc.; (2) refusing to take off a compulsory nonsuit in favor of appellee Holiday House, Inc.; and (3) excluding evidence of breathalyzer and blood test results. We agree with the latter two contentions and, accordingly, reverse the order of the lower court and remand for a new trial.

Appellant, administrator of the estate of John R. Couts, brought wrongful death and survival actions to recover damages allegedly resulting from Couts' death in an automobile accident. The facts surrounding the accident are as follows: On February 12, 1977, appellee Dean P. Ghion (Ghion),[1] attended a business meeting at a restaurant and motel operated by appellee Holiday House, Inc. (Holiday House), a licensee of the Pennsylvania Liquor Control Board. The meeting was held by appellee Refreshment Products, Inc. (Refreshment Products), a soft drink distributor for whom Ghion was a dealer. Refreshment Products had arranged with Holiday House for the latter to provide alcoholic beverages for those attending this meeting. Between

1. Appellant released Ghion from liability following a settlement reached before trial. Thus, though he is named as an appellee, Ghion is not involved in this appeal.

2:00 and 3:30 in the afternoon, Ghion consumed eight cocktails at the meeting.[2] Subsequently, Ghion ate lunch, and the meeting ended. At approximately 5:00 p. m. Ghion went to a bar located elsewhere in the Holiday House restaurant where he was served two additional cocktails.[3] Ghion finished the last of these drinks at approximately 5:15 p. m. and then left the bar in his Lincoln Continental automobile. Ghion did not consume alcoholic beverages at any other location before the accident.

The accident occurred at approximately 6:00 p. m. on the same day on Route 30 in North Huntingdon Township, Westmoreland County. Road surfaces were wet from an earlier rain and continuing drizzle. Ghion was driving east on Route 30 when his automobile suddenly crossed the double yellow divider line, proceeded into the westbound traffic lanes for 300 to 400 feet, and collided with the Toyota pickup truck which the decedent was driving. Ghion did not apply his brakes prior to the collision. Ghion's car returned briefly to an eastbound lane, crossed back over into the westbound lanes, ran off the roadway, and ultimately came to rest approximately thirty feet north of the roadway in a cemetery. Both vehicles were damaged extensively, and the decedent died at the scene. Although it was dark at the time of the accident, Ghion had been driving without the use of his automobile lights.

Within minutes after the accident a North Huntingdon Township police officer arrived at the scene to investigate. As he approached Ghion he observed Ghion walking with a staggering gait, and he detected a strong odor of alcohol. When the officer asked to see Ghion's driver's license and vehicle registration card, Ghion fumbled through his wallet, dropped some cards, and spoke with a slur as though intoxicated.

In addition to suing Ghion for his alleged negligent driving, appellant sought damages from Refreshment Products

2. Ghion described the cocktails as "vodka and sours."

3. These drinks are also described in the record as "vodka and sours."

and Holiday House based on their alleged negligence in serving Ghion alcoholic beverages while Ghion was visibly intoxicated. The lower court granted summary judgment to Refreshment Products and a compulsory nonsuit in favor of Holiday House. Following denial of his motion to set aside these actions, appellant took this appeal.

■ Appellant contends that the lower court erred in granting summary judgment in favor of Refreshment Products. As noted above, appellant based his claims against both Refreshment Products and Holiday House on their alleged negligence in serving Ghion alcoholic beverages while he was visibly intoxicated. Section 4–493(1) of the Liquor Code, 47 P.S. § 4–493(1), provides that it is unlawful

[f]or any licensee [of the Pennsylvania Liquor Control Board] . . ., or any employe, servant or agent of such licensee . . . or any other person to sell, furnish or give any liquor or malt or brewed beverages, or to permit any liquor or malt or brewed beverages to be sold, furnished or given, to any person visibly intoxicated.

Our Supreme Court has held that "a violation of this statute is negligence per se and, if the violation was the proximate cause of plaintiff's injury, defendant is liable for it." *Majors v. Brodhead Motel*, 416 Pa. 265, 268, 205 A.2d 873 (1965). *See also Jardine v. Upper Darby Lodge No. 1973*, 413 Pa. 626, 198 A.2d 550 (1964); *Smith v. Clark*, 411 Pa. 142, 190 A.2d 441 (1963). Despite the language of § 4–493(1) of the Liquor Code that it is unlawful for "any . . . person" to provide intoxicating beverages to a visibly intoxicated person, our Supreme Court has refused to impose civil liability for violation of this provision on persons who are not licensed and engaged in the sale of intoxicants. *Manning v. Andy*, 454 Pa. 237, 310 A.2d 75 (1973). Refreshment Products is not a licensed entity so engaged. Because of this fact, the lower court found that Refreshment Products could not be held liable for decedent's death and granted its motion for summary judgment. We find no error in this

ruling and therefore affirm the grant of summary judgment for Refreshment Products.[4]

 Unlike Refreshment Products, Holiday House, a liquor licensee, may be held civilly liable for injuries proximately resulting from its unlawful sale of alcoholic beverages to a visibly intoxicated person. *Majors v. Brodhead Hotel, supra; Jardine v. Upper Darby Lodge No. 1973, supra; Smith v. Clark, supra.* Accordingly, as the lower court correctly noted, Holiday House's liability hinges on whether Ghion was visibly intoxicated when he was served his last drink at the Holiday House bar, forty–five minutes to one hour before the accident occurred. Even if Ghion was intoxicated at the time of the accident and his intoxication proximately caused decedent's death, Holiday House cannot be held liable unless Ghion was visibly intoxicated when served at the Holiday House bar. The lower court stated in its opinion that appellant failed to present any direct evidence suggesting that Ghion was visibly intoxicated at this critical time. Consequently, the court granted and refused to set aside a compulsory nonsuit in favor of Holiday House. Appellant contends that there was sufficient evidence to warrant submitting the issue to the jury and therefore that the lower court erred in granting the nonsuit. We agree.

"On appeal from a compulsory non–suit the plaintiff must be given the benefit of every fact and every reasonable inference of fact arising from the evidence, whether direct or circumstantial, and all conflicts must be resolved in the plaintiff's favor. A compulsory nonsuit may be entered only in a clear case where the facts and circumstances lead unerringly to but one conclusion." *Paul v.*

4. Appellant cites *Giardina v. Solomon*, 360 F.Supp. 262 (M.D.Pa. 1973), in which the district court refused to grant summary judgment to a college fraternity against whom liability was being asserted under 47 P.S. § 4–493(1). Although the district court concluded that the broad language of the statute permitted liability to be imposed on the fraternity, a non–liquor licensee, we note that the case was decided before our Supreme Court definitively resolved the issue in *Manning v. Andy, supra.* Accordingly, *Giardina* is not the law in Pennsylvania and is of no assistance to appellant.

*Hess Bros.*, 226 Pa.Super. 92, 94–95, 312 A.2d 65, 66 (1973) (citations omitted). In a trespass case, a plaintiff need not exclude every other reasonable possibility that could have caused the accident. "It is not necessary, under Pennsylvania law, that every fact or circumstance point unerringly to liability; it is enough that there be sufficient facts for the jury to say reasonably that the preponderance favors liability." *Jones v. Treegoob*, 433 Pa. 225, 230, 249 A.2d 352, 355 (1969).

*Gill v. McGraw Electric Co.*, 264 Pa.Super. 368, 378, 399 A.2d 1095, 1100 (1979) (quoting *Cornell Drilling Co. v. Ford Motor Co.*, 241 Pa.Super. 129, 135, 359 A.2d 822, 825 (1976)).

Viewing the evidence in light of these principles, we conclude that the issue of whether Ghion was visibly intoxicated when he was served his last drink at the Holiday House bar should have been submitted to the jury. Evidence presented at trial established that Ghion had consumed a substantial amount of alcohol before being served his last drink; that Ghion had driven erratically and without using his car's lights in the dark; and that Ghion had appeared intoxicated to the investigating police officer. Additionally, improperly excluded evidence of Ghion's blood alcohol content (*see infra*) would have lent further support to an inference that Ghion may have been visibly intoxicated at the Holiday House bar. Despite the lack of direct evidence bearing on Ghion's condition when he was served his last drink, we think that the jury could have reasonably concluded that he was visibly intoxicated at that time. Accordingly, we hold that the lower court erred in refusing to take off the compulsory nonsuit entered in favor of Holiday House.

■ Appellant contends finally that the lower court erred in excluding evidence of the results of breathalyzer and blood tests taken after the accident. A breathalyzer test administered to Ghion at 8:31 p. m., approximately two–and–one–half hours after the accident, indicated that Ghion's blood alcohol content at the time was .12 percent. A test performed on blood drawn from Ghion at 8:43 p. m. the

same day also showed a blood alcohol content of .12.[5] The trial court refused to admit the results of these tests, as well as the opinion of a local police officer that, based on these test results, Ghion's blood alcohol content was .14 at the time of the accident.

The issue of the admissibility of blood alcohol test results most frequently arises in cases in which reckless or negligent operation of an automobile is the central issue. In such cases, our appellate courts have long adhered to the rule that "while proof of intoxication is relevant . . . the mere fact of drinking intoxicating liquor is not admissible, being unfairly prejudicial, unless it reasonably establishes a degree of intoxication which proves unfitness to drive." *Fisher v. Dye*, 386 Pa. 141, 148, 125 A.2d 472, 476 (1956). *See also Billow v. Farmers Trust Co.*, 438 Pa. 514, 266 A.2d 92 (1970); *Morreale v. Prince*, 436 Pa. 51, 258 A.2d 508 (1969); *Wentworth v. Doliner*, 399 Pa. 356, 160 A.2d 562 (1960); *Critzer v. Donovan*, 289 Pa. 381, 137 A. 665 (1927); *Cusatis v. Reichert*, 267 Pa.Super. 247, 406 A.2d 787 (1979); *Sentz v. Dixon*, 224 Pa.Super. 70, 302 A.2d 434 (1973); *Kriner v. McDonald*, 223 Pa.Super. 531, 302 A.2d 392 (1973). In *Critzer v. Donovan, supra,* our Supreme Court explained the rationale behind this rule as follows:

> Certainly if the driver was not intoxicated or driving while under the influence of liquor, the fact that he may have taken a drink has no bearing on the question of his negligence. Such testimony directly tends to raise in the minds of the jurors another issue,—whether he was intoxicated,—which, in the absence of other evidence, should not have entered into the determination of the case.

289 Pa. at 385, 137 A. at 666.

Pursuant to this rule, the Supreme Court in *Billow v. Farmers Trust Co., supra,* affirmed the lower court's exclusion of proffered testimony of a doctor "who apparently would have stated that, in his opinion, a man with a blood

5. The accuracy of the test results has not been questioned on this appeal.

alcohol content of .14 would be affected in his driving." 438 Pa. at 516, 266 A.2d at 93. The Court held that such testimony, by itself, "falls short of the requirement that the evidence show 'a degree of intoxication which proves unfitness to drive.'" *Id.*, 438 Pa. at 517, 266 A.2d at 93 (quoting *Fisher v. Dye, supra*). Nonetheless, we have recently held that evidence of elevated blood alcohol content, when accompanied by other evidence suggesting a high degree of intoxication, is admissible. In *Cusatis v. Reichert, supra*, we held that the lower court had improperly excluded several items of evidence suggesting intoxication, including the results of a breathalyzer test. We stated:

> The offer of proof included testimony that Reichert had a blood alcohol content of .14 approximately one hour after the accident. Our legislature has expressly approved the blood alcohol test as a means of determining whether a person is driving under the influence of intoxicating beverages. Indeed, a blood alcohol content of .10 percent or more of weight raises a presumption of intoxication. 75 Pa.C.S. § 1547(d)(3). While it is true that the supreme court in *Billow*, when confronted with a defendant having this same amount of blood alcohol–.14–ruled the testimony inadmissible, it is crucial to note that the breathalyzer result was there the sole evidence presented to support an inference of intoxication. Such a reading on a breathalyzer might be caused by legitimate medication or chemical substances. Instantly, however, appellants also proffered testimony that Reichert had consumed a considerable amount of alcohol prior to the incident, and had the odor of alcohol about him when the investigating officer arrived at the scene. Taken in its totality, this evidence reveals far more than the mere hint of intoxication condemned as prejudicial in *Morreale* [*v. Prince, supra*] and *Vignoli* [*v. Standard Motor Freight, Inc.*, 418 Pa. 214, 210 A.2d 271 (1965)]. As evidence presented could reasonably support a conclusion that Reichert was intoxicated, the question should have been placed before the jury.

267 Pa.Super. at 251–252, 406 A.2d at 789–90 (footnote omitted).

In the present case evidence properly admitted and which is not here challenged established that Ghion had consumed a considerable amount of alcohol in the hours before the accident and that he smelled strongly of alcohol and walked and spoke as though intoxicated immediately after the crash. As in *Cusatis*, these facts, together with evidence of the results of the breathalyzer and blood tests, "reveal[ ] far more than the mere hint of intoxication condemned as prejudicial" in the cases cited above. *Id.*, 267 Pa.Super. at 252, 406 A.2d at 790.[6] Consequently, we conclude that the admission of the test results could not have unfairly prejudiced Holiday House insofar as Ghion's driving related to the issue of whether Holiday House's alleged negligence proximately caused the collision. Additionally, we see no danger of prejudice in the admission of the test results with regard to the matter of Holiday House's alleged violation of section 4–493(1) of the Liquor Code. Such test results are relevant circumstantial evidence bearing on the question of whether Ghion was visibly intoxicated when he was served cocktails at the Holiday House bar. Accordingly, we hold that the lower court erred in excluding the results of these tests.

In so holding, however, we note that the lower court properly excluded the proffered opinion of a police officer that, based on these test results, Ghion's blood alcohol content was .14 at the time of the accident. Evidence "relating back" a blood alcohol test to a time before the test was administered has been viewed with skepticism. *See Schwarzbach v. Dunn*, 252 Pa.Super. 454, 381 A.2d 1295 (1977) (plurality opinion). Without deciding whether such evidence is ever admissible, we note simply that it was properly excluded here, where the evidence was in the form

6. Although in this case there was a two–and–one–half hour interval between the accident and a breathalyzer test reading of .12 as compared with a one hour interval and a .14 reading in *Cusatis*, such factual distinctions bear on the weight of this evidence, and not its admissibility.

of the opinion of a police officer whose qualifications to render such an opinion were not established at trial.

Order reversed in part and case remanded for a new trial as to appellee Holiday House.

SPAETH, J., concurs in the result.

VAN der VOORT, J., files a dissenting opinion.

VAN der VOORT, Judge, dissenting:

I respectfully dissent from the holding of the Majority of the Panel in this case.

This is a tort case involving claims in wrongful death and survival actions. The court below refused to take off a compulsory non–suit which it had granted in favor of appellee Holiday House, Inc. The sole issue is whether or not the bartender at the Holiday House served defendant Dean P. Ghion two cocktails when he was visibly intoxicated. The sole evidence that Ghion was visibly intoxicated when he was served the critical drinks is that forty–five minutes after he had been served these two cocktails he was visibly intoxicated at the scene of an accident which he had caused. To hold, as does the Majority, that jurors may infer from the fact that a person who was visibly intoxicated at the scene of an automobile accident to the extent that he was unfit to drive an automobile would have appeared visibly intoxicated to a bartender in the Holiday House three quarters of an hour before the accident, is extending the law of circumstantial evidence much too far. There was no direct evidence at all as to Ghion's condition or appearance at the time he was served the last two drinks in the Holiday House. The Majority holds that this remote and slender evidence is sufficient to prove by a preponderance of evidence that Ghion was visibly intoxicated at the time he was served alcoholic drinks forty–five minutes earlier.

I would affirm the order of the court below.